UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Docket No. 18-CR-10346-FDS |
| v. | ) | |
| | ) | |
| MATTHEW REIS | ) | |
| | ) | |
| | ) | |

### DEFENDANT MATTHEW  REIS'S SENTENCING MEMORANDUM

Defendant Matthew Reis, by and through his undersigned attorney, hereby submits the following memorandum for the Court's consideration at his August 27, 2021, sentencing in the above-captioned matter.  As explained in further detail below, Mr. Reis respectfully submits that, after consideration of all of the factors under 18 U.S.C. § 3553(a), a sentence of eighty-four (84) months of incarceration – a term of seven years – plus an additional three-year period of supervised release would be sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.

Mr. Reis further requests that this Court recommend that he be assigned to a facility where he can participate in an intensive, 500-hour drug treatment program that offers him a full range of substance abuse and other counseling.  Admission to such a program would provide him with greater ability to address his significant personal challenges and to return to his family with a chance to lead a productive and healthy life after his release from incarceration.

## THE DEFENDANT'S PERSONAL HISTORY

Mr. Reis's personal background is summarized in the Pre-Sentence Report ("PSR").  See PSR ¶¶ 59-119.  Born in Beverly, Massachusetts in 1979, Mr. Reis had an extraordinarily challenging childhood during which, starting at a very young age, he was regularly subjected to significant and serious physical and emotional abuse committed by his biological father.  *Id.* ¶¶ 59-60.  That abuse continued after his parents divorced when he was six years old, and did not stop until he ceased all contact with his father at the age of 10 after a particularly violent incident.  *Id.* ¶ 61.  Commencing at that age, Mr. Reis ceased all further contact with his father, and he was raised solely by his mother and his maternal grandparents.  *Id.*

The significant abuse Mr. Reis experienced as a young child manifested itself in a series of emotional and behavioral issues that became increasingly serious as he entered adolescence. *Id.* ¶ 62.  During this period, Defendant's family pursued various forms of mental health and behavioral treatment for him, which led to several periods of hospitalization.  *Id.* ¶¶ 62, 92.  Mr. Reis was prescribed with different medications, and he underwent counselling designed to help him address his emotional issues, including the abuse he experienced from his biological father. *Id.*  When Mr. Reis's behavioral issues persisted, however, his mother and stepfather (his mother had since remarried) proceeded to adopt a "tough love" strategy, requiring him to move out of the family home into a separate apartment.  *Id.* ¶ 63.  While Mr. Reis's family continued to offer some support to him after he moved out, Mr. Reis struggled throughout this period.  *Id.*  He eventually dropped out of high school at the age of 16, and his relationships with his family members and peers became increasingly strained.  *See, e.g., id.* ¶ 93

During his early teenage years, likely due at least in part to his challenging emotional condition and his experience of abuse, Mr. Reis began using alcohol as well as various forms of

illegal drugs. *Id.* ¶¶ 98-103. He began smoking marijuana at the age of 14, *id.* ¶ 98, and he soon advanced to using other drugs including Ketamine, methamphetamine, cocaine, oxycodone, and other controlled substances. *Id.* ¶¶ 99-103. That heavy illegal drug use eventually blossomed into a devastating heroin habit that—with the notable exception of a period of sobriety between approximately 2010 and 2016—has been a consistent part of Mr. Reis's life since he was approximately 25 years old. *Id.* ¶ 103.

Not surprisingly, Mr. Reis's emotional and substance abuse issues also led him to make a series of poor choices during his teenage years and young adulthood that resulted in multiple contacts with law enforcement and the criminal justice system. At the age of 14, Mr. Reis was charged with several offenses that ultimately led to him being placed in DYS custody on several occasions. *Id.* ¶¶ 28-29. Similar conduct continued into his later teenage years, when Mr. Reis received several probationary sentences arising from various property and drug-related offenses. *Id.* ¶¶ 30-34. That pattern continued into his early 20s, when Mr. Reis served several relatively short sentences and was placed on probation for various offenses. *Id.* ¶¶ 35-39. His conduct eventually escalated into conduct that led to several more serious crimes during his mid-to-late 20s, when Mr. Reis was convicted and sentenced in the Essex Superior Court for several offenses involving the distribution of cocaine and heroin, conduct that was plainly part of Mr. Reis's ongoing efforts support his own significant drug habit. *Id.* ¶¶ 40-42.

As referenced above, after his release from custody in early 2013, Mr. Reis was able to maintain his sobriety for several additional years, until approximately late 2015/early 2016. *Id.* ¶¶ 103-105. During this period, Mr. Reis participated regularly in a Suboxone maintenance program in Salem, Massachusetts. *Id.* at 104. He was also able to keep and maintain steady employment for the first time in his life, including maintaining regular work with both a catering

service and a local nightclub.  *Id.* ¶¶ 114-117.  During this same period, Mr. Reis married

Danielle Pelletier, with whom he lived and had one child, a daughter (now aged 7).  *Id.* 73.

Unfortunately, in approximately late 2015/early 2016, Mr. Reis relapsed.  He stopped

using Suboxone, and he resumed his regular heroin use, as well as his occasional use of cocaine

and other drugs.  *Id.* ¶ 105.  Not surprisingly, his relapse led quickly to a significant breakdown

in his relationship with Ms. Pelletier, *see id.* ¶ 73, the loss of his steady employment, *id.* ¶¶ 116-

117, and eventually a resumption of illegal conduct that helped Mr. Reis support his ongoing

drug use.  *See Id.* ¶¶ 43-44.  That conduct eventually led to Mr. Reis's arrest on September 18,

2018, which is the basis of this criminal action.

## THE OFFENSE CONDUCT

The offense conduct that is the subject of the Indictment in this case is described in ¶¶ 8-

13 of the PSR.  Those facts demonstrate that on September 13, 2018, Mr. Reis was in a hotel

room which had been rented by another individual at the Town Line Inn in Malden,

Massachusetts, where he was questioned by local police officers who were looking for a missing

woman whom they believed to be an opiate addict.  *Id.* ¶¶ 8-9.  When Mr. Reis was pat-frisked

by the officers, their search of his person recovered a small baggie containing a mixture of heroin

and fentanyl.  *Id.* ¶¶ 9-10.  An additional baggie containing a similar mixture of heroin and

fentanyl was recovered by the officers from an open backpack in the same hotel room.  *Id.* ¶ 11.

The total amount of illegal drugs recovered by the police officers during their interaction

with Mr. Reis at the Town Line Inn was approximately 24 grams.  *Id.* ¶ 13.  During a subsequent

search of the hotel room, officers also recovered a firearm and some ammunition that was

located in a laundry bag full of clothes.  *Id.*

After he was questioned by police at the Town Line Inn, Mr. Reis was arrested on related state charges, and he was placed in state custody for violating the terms of his state probation. *Id.* ¶ 1.  He was subsequently sentenced for that state probation violation, and he remained in state custody for approximately eighteen months, until March 10, 2020, when that state sentence was completed.  *Id.*

### PROCEDURAL HISTORY

On September 26, 2018, Mr. Reis was named in an Indictment filed with this Court charging him with one count of Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C) (Count 2) and one count of being a Felon in Possession of a Firearm in violation of 18 U.S.C.  § 922(g) (Count 2).  Mr. Reis was not immediately arrested on these federal charges, however.  Instead, on October 1, 2018, he was sentenced in state court and placed in state custody for a probation violation arising out of the same conduct.  PSR ¶ 43.  He was eventually arraigned in this Court on January 24, 2019.  On March 10, 2019, when his state probation sentence was completed, he was transferred into federal custody.  *See* PSR ¶ 1.

On March 11, 2021, Mr. Reis entered a plea of guilty to the drug offense set forth in Count 1 of the Indictment.  *Id.* ¶ 2.  In the parties' plea agreement, the government has agreed to dismiss Count 2 of the Indictment.  *Id.* ¶ 3.  The plea agreement in this case was entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  *Id.*  In that agreement, the parties have also agreed, *inter alia*, on a sentence of incarceration ranging between 84 and 169 months, with the government recommending a sentence of 151 months. *Id.*  After a requested continuance due to Mr. Reis's ongoing health issues, the sentencing has been scheduled for Friday, August 27, 2021, at 2:00 p.m.

## THE SENTENCING GUIDELINES

There is no significant dispute between the parties regarding the proper calculation of the Defendant's offense level or criminal history points under the United States Sentencing Guidelines.  Pursuant to U.S.S.G. § 2D1.1(c)(10), the base offense level applicable to Mr. Reis, based upon the total of approximately 24 grams of the mixture of heroin and fentanyl recovered by the officers, is **20**.  *See* PSR ¶ 17.  The Probation Office concludes in the PSR that an additional two levels should be added to this total under U.S.S.G. § 2D1.1(b)(1) because a firearm "was possessed by the defendant in the room in which the fentanyl/heroin and drug paraphernalia were also present."  *See* PSR ¶ 18; *see also* Addendum to PSR at Response to Objection #2.[1]  After three points are deducted for Mr. Reis's acceptance of responsibility, the PSR calculates Mr. Reis's Adjusted Offense Level as **22**.  PSR ¶ 22.  Thus, if the three-point reduction for Mr. Reis's acceptance of responsibility were applied to that number, Mr. Reis's Final Offense Level in this case would be **19.**

The PSR separately calculates Mr. Reis's criminal history score as totaling twelve (12) points, resulting in a criminal history category of V.  *Id.* ¶ 47.  Accordingly, absent any other guideline provisions, Mr. Reis's combination of a Final Offense Level of **19** and criminal history category of V would result in a guideline sentencing range of **57 to 71 months**.  See U.S.S.G.,

---

[1] Mr. Reis has objected to this two-point enhancement.  *See* PSR Addendum at Objection #2. Specifically, Mr. Reis contends that he did not "possess" the firearm recovered in the hotel room in connection with the underlying offense.  *Id.*  Moreover, given that Mr. Reis had not rented the hotel room, *see* PSR ¶ 8, and that the firearm was buried in a laundry bag filled with clothes, *id.* ¶ 12, Mr. Reis contends that, on this record, it is "clearly improbable" that the firearm recovered in the laundry basket was connected to the underlying drug offense.  *See* U.S.S.G. § 2D1.1(b)(1), Application Note 11.   Regardless, Mr. Reis acknowledges that his objection on this point is ultimately overridden by the application of the "Career Offender" guideline, U.S.S.G. § 4B1.1, which Mr. Reis agrees applies to him in this case for guidelines calculation purposes.  *See* PSR Addendum at Objection #2.

Ch. 5, Part A.  Such a sentence—even one at the low end of that guideline range—would be a significant and serious sentence for Mr. Reis.

Unfortunately for Mr. Reis, the United States Sentencing Guidelines offer an additional complication.  Specifically, due to his prior drug-related convictions, *see*, *e.g.,* PSR ¶¶ 41, 42, Mr. Reis's guideline calculation is affected by the "Career Offender" guideline, U.S.S.G. § 4B1.1.  <u>See</u> PSR ¶¶ 21, 33.  The impact of the "Career Offender" provision upon Mr. Reis in this case is dramatic: it increases his Final Offense Level by ten (10) full levels from 19 to **29**, *see* PSR ¶¶ 23, 26, and it converts his criminal history category from V to VI.  <u>Id.</u> ¶ 48 .  As a result, Mr. Reis's applicable sentencing guideline range increases from **57-71 months** to **151-188 months**.  <u>Id.</u> ¶ 133.  As a result, instead of a facing an advisory guideline sentence of approximately five to six years, Mr. Reis is facing an advisory guideline sentence in this case ranging between approximately twelve and fifteen years.  *Id.*

## **ARGUMENT**

Mr. Reis respectfully submits that a sentence based primarily upon the application of the "Career Offender" guideline in this case would result in an unreasonable sentence that is far greater than what is necessary to comply with the purposes set forth in 18 U.S.S.C. § 3553(a).  Mr. Reis also contends that any sentence imposed by this Court may properly consider and account for the eighteen (18) months that he spent in state custody following his arrest for the conduct at issue in this case.  Accordingly, Mr. Reis requests that this Court impose a sentence of eighty-four (84) months – a serious and significant sentence that Mr. Reis submits would appropriately balance the policy goals identified in the sentencing statute.

A. **This Court May Properly Impose a Sentence Outside the Sentencing Guideline Range, after Consideration of the Factors Set forth in 18 U.S.C. § 3553(a).**

As an initial matter, there is no doubt that this Court has the discretion to impose a sentence that varies from the sentencing range reflected by the sentencing guidelines calculations. *See United States v. Gall*, 552 U.S. 38, 51-52 (2007); *United States v. Martin*, 520 F.3d 87, 90-91 (1st Cir. 2008). While the sentencing guidelines calculations are an important factor that must be calculated and considered in connection with a defendant's sentencing, *see Martin*, 520 F.3d at 91; *see also* 18 U.S.C. § 3553(a)(4-5), they are far from the only relevant factor for this Court to consider. Other important factors include consideration of the nature and characteristics of the defendant, the need for the sentence to provide the defendant with correctional treatment in the most effective manner, and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(1-3, 6).[2] Accordingly, this Court may appropriately vary from the guideline sentence in order to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes set forth in the statute. *Id*. Indeed, once the Court has calculated the guidelines sentencing range, the sentencing process becomes "broad, open-ended, and significantly discretionary." *Martin*, 520 F.3d at 92 (citing *United States v. Vega-Santiago*, 519 F.3d 14, 20 (1st Cir, 2008)); *see also United States v. Jones*, 762 F. Supp. 2d 270, 281 (D. Mass. 2010), *aff'd* 689 F.3d 12 (1st Cir. 2012) (explaining that once the three steps to calculate the guideline sentence are completed, "it is the fourth step that is the most important. For it is during this step that a fair, impartial and individual sentence—mindful both of the needs of society and the circumstances of the individual offender—is hammered out pursuant to 18 U.S.C. § 3553(a).").

---

[2] The "need to provide restitution to any victims," *see* 18 U.S.C. § 3553(a)(7), is not an issue in this case. *See* PSR ¶¶ 134.

**B.**  **A Sentence Based on the "Career Offender" Guideline in this Case Exceeds What is Necessary to Achieve the Sentencing Purposes Set Forth in 18 U.S.C. § 3553(a).**

Here, a projected guidelines sentence of 151 months or more is far greater than what is necessary to achieve a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of the sentencing statute. 18 U.S.C. § 3553(a). Among other points, Mr. Reis notes that a sentence of 151 months would be approximately *two and one-half times* greater than the mandatory minimum five-year sentence that Congress has established for a sale of 100 grams of a mixture containing heroin or 40 or more grams of any mixture containing fentanyl. *See* 21 U.S.C. § 841(b)(1)(B)(i & vi). The actual drug quantity at issue in this case (27 grams) is well below these levels.

Moreover, while Mr. Reis does not dispute the relevance of his criminal record to this proceeding, he notes simply that his personal "history and characteristics" are not so egregious that such a lengthy sentence is merited. 18 U.S.C. § 3553(a)(1). There is no doubt that Mr. Reis had a challenging childhood, and that those challenges have contributed greatly to his ongoing struggles with mental health and substance abuse issues. *See generally* PSR ¶¶ 62-63, 92-96, 98-107. Those struggles, in turn, have necessarily contributed to his criminal history, nearly all of which involves substance abuse-related conduct. *See generally* PSR ¶¶ 30-44. A mechanical application of the "Career Offender" guideline to Mr. Reis in this case would ignore these important facets of Mr. Reis's personal history and characteristics and would leave Mr. Reis with a sentencing range identical to the sentencing range applicable to offenders with far more troubling and violent personal histories and a greater number of prior serious convictions. As a result, a strict application of the guideline range in this case would create what federal courts have referred to as an unwarranted sentencing uniformity. *See* 18 U.S.C. § 3553(a)(6); *accord United States v. Moreland*, 568 F. Supp.2d 674, 688 (S.D.W.V. 2008) (varying from the

guideline range established by the "career offender" guideline where "[t]wo relatively minor and non-violent prior drug offenses, cumulatively penalized by much less than a year in prison, vaulted this defendant into the same category as major drug trafficker engaged in gun crimes or acts of extreme violence").

Notably, the imposition of a sentence that is significantly lower than a guideline range influenced by the "Career Offender" guideline is far from unprecedented in this District.  *See United States v. Jones*, 762 F. Supp. 2d 270, 284 (D. Mass. 2010) (explaining that "the draconian sentences mandated by the career offender guidelines have been largely discredited in Massachusetts"); *United States v. Whighara*, 754 F. Supp. 2d 239, 247-48 (D. Mass. 2010) (distinguishing between "offenders who qualify for career offender treatment because of a life of violent crime" and those "who meet the Guidelines standard . . . because of a series of very minor drug charges[,]" and declining to impose sentence based on "Career Offender" guideline where application of guideline overstated defendant's status and would have resulted in unwarranted sentencing disparities); *see also United States v. Lacy*, 99 F. Supp. 2d 108, 122 (D. Mass. 2000), *aff'd sub nom United States v. Dedrick*, 16 F. App'x 10 (1st Cir. 2001) (citing *United States v. Hammond*, 37 F.Supp.2d 204 (E.D.N.Y.1999) with approval for its analysis that application of the "Career Offender" guideline would overstate a defendant's criminality); *accord United States v. Newhouse*, 919 F. Supp. 2d 955, 967 (N.D. Iowa 2013) (holding that it will "join the growing chorus of federal judges who have rejected applying the Career Offender guideline in certain cases[,]" and summarizing such cases); *United States v. Peterson*, 2013 WL 142478, *29 (D.N.M. Jan. 7, 2013) (varying from guideline range where the court found that "the career offender enhancement substantially overstates [the defendant's] criminal history"); *United States v. Merced*, 2010 WL 3118393, *2 (D.N.J., Aug. 4, 2010) (granting variance from

"Career Offender" guideline based on defendant's specific circumstances rather than as a policy-based variance); *United States v. Woody*, 2010 WL 2884918, *9 (D. Neb., July 20, 2010) (declining to impose a sentence based upon "Career Offender" guideline where doing so would result in an "excessively harsh" sentence); *United States v. Patzer*, 548 F. Supp.2d 612, 616-17 (N.D. Ill. 2008) (declining to apply "Career Offender" guideline where its application would result in sentence that was "in excess of the sentence required for deterrence"); *Moreland,* 568 F. Supp. 2d at 688  (granting variance where application of the "Career Offender" guideline resulted in unwarranted sentencing disparity among different defendants).

Indeed, federal judges in this District have not infrequently departed or varied significantly from the "Career Offender" guideline in cases where defendants had far more troubling personal and criminal histories than Mr. Reis.  For example, in *United States v. Jones*, 2020 WL 6205783, Crim. No. 15-10148-LTS (D. Mass., October 22, 2020), the Court noted that a defendant's four prior convictions for drug distribution offenses and his prior offense for threatening and assaulting the mother of one of his children had rendered him a "Career Offender" under the sentencing guidelines, resulting in a guideline range of 262-324 months. <u>Id.</u> at *2 & n.3.  Despite these calculations, the Court had sentenced Mr. Jones to the applicable mandatory minimum sentence of ten years, a variance that was **142 months below** the advisory "Career Offender" guideline range.  *Id.*  Similarly, in *United States v. Finch*, 2020 WL 2079301, Crim. No. 18-10006-PBS (D. Mass., April 30, 2020), a defendant who had a "violent history" that included armed robbery was determined to be a "career offender" under the sentencing guidelines.  *Id.* at *2.  Notwithstanding that violent history, the defendant in *Finch* had received a sentence of seventy-two (72) months of incarceration, **116 months below** the 188-235 month period established by the "Career Offender" guideline.  *Id.*  In *United States v. Gomez*, 2020 WL

11

1930471, Crim. No. 14-10297-IT (D. Mass., April 21, 2020), the Court described a defendant

who had compiled a total of thirty (30) criminal history points, but who had received a sentence

of eighty-seven (87) months, a sentence that was **101 months below** his "career offender"

guideline range of 188-235 months.  *Id.* at *2.[3]  And in *United States v. Martin*, 2012 WL

2370284, Crim. No. 05-40023-FDS (D. Mass., June 12, 2012), this Court described a defendant

with a "lengthy criminal history" who qualified as a "Career Offender" but who received a non-

guideline sentence that was **80 months** below the applicable "career offender" guideline range.

*Id.*; *see also id.* at Docket Entry #74 at 24 (transcript of sentencing proceedings noting

defendant's "lengthy criminal history"); *accord Jones*, 762 F. Supp. 2d at 282, Crim. No. 09-

10048-WGY (D. Mass. 2010) (sentencing a gang member and "prototypical career offender" to a

period of incarceration of 120 months, a term which was **112 months below** the 232 months

established by the low end of the "Career Offender" guideline range).

     While Mr. Reis recognizes and appreciates that the final sentence determination in each

case requires an individualized assessment by the Court of the particular offender and the

particular crime, he respectfully submits that his personal history and characteristics are less

severe than the history and characteristics of the defendants involved in the above-referenced

cases.  Accordingly, he respectfully submits that a sentence in this case based upon the "Career

Offender" guideline would result in unwarranted sentencing disparities among defendants with

criminal histories not dissimilar to his own.  18 U.S.C. § 3553(a)(6).  Indeed, his proposed

---

[3] *Gomez* involved a binding plea agreement submitted pursuant to Fed. R. Crim P. 11(c)(1)(C), but the Court in that case accepted the proposed disposition only after consideration of the applicable sentencing factors under 18 U.S.C. .§ 3553(a), including a finding that "a sentence within the guideline range based upon the Career Offender enhancement would invite unwarranted disparities in sentencing among defendants with criminal histories similar to this defendant.  *See United States v. Gomez*, Case No. 14-CR-10297-IT (D. Mass.), Judgment of October 13, 2015, Docket Entry #81 at 9.

sentence of eighty-four (84) months would reflect a variance that is **67 months below** the low end of the "career offender" guideline in this case, see PSR ¶ 124, a variance that is markedly smaller than each of the variances in the cases described above.

Plainly, the sentences imposed in the above-referenced cases were deemed sufficient by those Courts to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, and to protect the public. See 18 U.S.C. § 3553(a)(2)(A-C). Mr. Reis's proposed sentence of eighty-four (84) months would achieve these same goals, and would avoid any unwarranted sentencing disparities, 18 U.S.C. § 3553(a)(6), while also assuring that the sentence appropriately accounts for the nature and circumstances of the offense and Mr. Reis's own personal history and characteristics. 18 U.S.C. § 3553(a)(1).

C. **This Court May Impose a Sentence that Accounts for the Time Served by Mr. Reis on His Now-Discharged State Probation Violation.**

In fashioning an appropriate sentence here, this Court also has the authority to impose a sentence that accounts for the approximately eighteen months that Mr. Reis served in state custody between September 13, 2018 (the date of his arrest) and March 10, 2020 (the date he was transferred into federal custody). Pursuant to U.S.S.G. § 5K2.23, this Court may downwardly depart in instances where a defendant (1) has completed serving a term of imprisonment, and (2) subsection (b) of U.S.S.G. § 5G1.3 would have provided an adjustment had that term of imprisonment been undischarged at the time of sentencing. *See* U.S.S.G. § 5K2.23; *see also* U.S.S.G. §5G1.3, Application Note 5. Section 5G1.3 of the Sentencing Guidelines, in turn, recognizes that sentencing courts have the authority to consider related dispositions in their efforts to structure overall sentences that they deem appropriate. *Id.*; *see also United States v. Carrera-Gonzalez*, 280 Fed. Appx. 11, 12 (1st Cir. 2008) (citing *United*

13

*States v. Crudup*, 375 F.3d 5, 8 (1st Cir. 2004)).  At bottom, these two provisions recognize that sentencing courts may properly consider the impact of related state sentences on criminal defendants in their efforts "to achieve a reasonable punishment for the instant offense."  U.S.S.G. § 5G1.3(d); U.S.S.G. § 5K2.23.

Here, Mr. Reis contends that the unique circumstances of this case merit a downward departure[4] that considers the time he has already served in state custody on the related state probation violation.  There is no dispute that the conduct that forms the basis of this federal case also served as the basis for the revocation of his state probation and led directly to the imposition of his now-discharged eighteen month state sentence.  *See* PSR ¶¶ 1, 43.  Accordingly, Mr. Reis has already served "a very substantial period of imprisonment" that resulted from conduct that is at least "partially within the relevant conduct for the instant offense."  *Cf.*  5G1.3(d), Application Note 4(E).  A downward departure in consideration of that now-discharged state sentence is particularly appropriate here, where, absent such a departure, Mr. Reis's combined punishment will have been "increased unduly by the *fortuity and timing* of separate prosecutions and sentencings."  *Id.* (emphasis added).  Indeed, had Mr. Reis been taken directly into federal custody on September 13, 2018, he would not only have already served an additional eighteen (18) months of any sentence this Court will ultimately impose, he would also have been earning potential federal good time credits for that same period of incarceration.[5]  A downward departure

---

[4] Of course, this Court need not treat the issues presented by Mr. Reis's state custody as a "downward departure," but may instead consider that now-discharged period of state custody in connection with its determination of what sentence it should impose in this case in order to comply with the overall purposes of the sentencing statute.  *See* 18 U.S.C. § 3553.

[5] Moreover, had Mr. Reis been placed in federal custody upon his arrest, the Massachusetts court would have had the option to order that his state probationary sentence run concurrently to his necessarily longer federal sentence.  *See Abrahams v. Commissioner of Correction*, 57 Mass. App. Ct. 861, 864-65 (2003).

(or other appropriate adjustment) therefore would assist the Court in the crafting of a final

sentence "that ensures a reasonable incremental punishment for the instant offense of

conviction." *Id.*

      Accordingly, Mr. Reis respectfully requests that, in fashioning an appropriate sentence in

this case, this Court downwardly depart from or adjust any sentence it might otherwise impose in

order to account for the eighteen months of state custody that he served as a result of the

"fortuity and timing" of the federal and state prosecutions at issue here. *Id.* Specifically, Mr.

Reis respectfully requests that whatever sentence the Court might otherwise elect to impose in

this case be reduced to account for that now-discharged eighteen months of state custody, as well

as his approximately two-and-one-half months of lost federal good time.[6] Such a result would

ensure that the final sentence imposed here "achieve[s] a reasonable punishment for the instant

offense." *See* U.S.S.G. § 5G1.3(d).

### D. Defendant's Proposed Sentence Will Satisfy the Other Purposes of the Sentencing Statute.

      Finally, Mr. Reis's proposed sentence of eighty-four (84) months of incarceration would

also serve the additional purpose of providing him with an adequate opportunity to receive

training, care and other correctional treatment that will assist him in making an effective

transition and preparing him for the future. 18 U.S.C. § 3553(a)(2)(D). Mr. Reis has

acknowledged that he would benefit from substance abuse and other counseling, and he requests

that this Court recommend that he participate in an intensive 500-hour substance abuse program.

PSR ¶¶ 110. The seven-year period of incarceration proposed here by Mr. Reis is sufficient to

---

[6] Pursuant to 18 U.S.C. § 3624(b), federal inmates who are serving a term of imprisonment of more than one year may receive credit of up to 54 days per year towards the service of that sentence for each year served in federal custody.

allow him to receive and benefit from such treatment, which will assist him when he re-enters

society.  At the same time, this proposed period of incarceration will provide Mr. Reis with

adequate incentive and time to devote himself to these efforts and to prepare himself to provide

for himself and his family upon his release.

### **CONCLUSION**

Mr. Reis recognizes and acknowledges the seriousness of his offenses, and he

understands and appreciates that his actions have had consequences that have not only inflicted

pain upon his family, but have also seriously damaged the broader community in which he lives.

Given his current age (42 years old), Mr. Reis remains hopeful that, with the assistance of the

resources of the Bureau of Prisons during his incarceration and the Probation Department during

his term of supervised release, there will still be time for him to rebuild his life and to become a

productive member of society and a trusted and valued member of his family.  An eighty-four

(84) month sentence – while far harsher than any sentence he has previously served – would give

him an opportunity to do just that.

For the foregoing reasons, Mr. Reis respectfully requests that this Court impose upon him

a sentence of incarceration of eighty-four (84) months, to be followed by the required three-year

term of supervised release.  Mr. Reis further requests that the Court further recommend that he

be admitted to a 500-hour substance abuse treatment program.  Finally, in light of his inability to

pay any fine, Mr. Reis respectfully requests that this Court decline to impose any fine in

connection with this case, other than the mandatory $100 special assessment.

Respectfully submitted,

Matthew Reis,
By his attorney,

*/s/ Daniel J. Cloherty*
Daniel J. Cloherty (BBO# 565772)
Todd & Weld LLP
One Federal Street
Boston, MA  02110
(617) 720-2626
dcloherty@toddweld.com

Dated: August 20, 2021

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served a true copy of the above document upon all parties with an interest in this matter by electronically filing through this Court's CM/ECF filing system this 20th day of August, 2021.

*/s/ Daniel J. Cloherty*
Daniel J. Cloherty